24-2236, Western Missouri, Allied Services v. Smash My Trash, et al. Ms. Sherman, when you're prepared, please proceed. Good morning, Your Honors, and may it please the Court and Counsel as well. Defendants want you to believe in this case that SMT taking control over and using Republic's property thousands of times, a use their expert admits causes degradation of the containers, and a use from which SMT has admittedly generated hundreds of thousands of dollars in profits, is not a violation of its property rights. That is as absurd and illogical as it sounds. SMT's ongoing use of and damage to Republic's containers is- Counsel, it seems like what we're really focused on here in my reading is your argument that you should have been able to obtain a jury trial. That is one of the points, Your Honor, yes, and certainly an important one. And that turned largely on whether or not there were damages that could be submitted to a jury, evidence of damages. That's part of it, Your Honor, yes. All right. Well, at least as to me, would you help me understand why the district court was incorrect in concluding that you did not have a right to a jury trial? Certainly, I'm happy to, Your Honor. And, of course, as this Court knows, a jury trial right is one of the most important rights that we have. In fact, John Adams once said that a representative government and trial by jury are the heart and lungs of liberty. And without them, we have no fortification against being ridden like horses, fleeced like sheep, worked like cattle, and fed and clothed like swine and hogs. Here, the district court took an inappropriate view of the case advanced by defendants that the issues in the case were a matter for the marketplace, not for the court. But what was the admissible evidence in the record when the district court looked at this? Because as I understand it, you know, there's allegations of damages, but when it comes to specific admissible evidence, the district court said, I don't see it. What was the evidence of damage to, as far as dollar amount, as far as number of dumpsters, as far as the nature of the damage, replacement, repair costs? What did you have? Thank you for the question, Your Honor. There was quite a bit in the record. And I'll start with defendants' own expert acknowledging that the use of the containers, that the compaction of the containers causes degradation. You still need to quantify that, though, as the plaintiff here, don't you? Don't you need to produce some evidence that you can submit to a jury that says, look, here's 50 of these that were damaged. Here's our professional or expert testimony about what it costs to repair or replace those. And I don't think that was in the record, was it? It was actually in the record, Your Honor. We had evidence of the containers that were used. We had a full accounting of the number of times Republicans smashed the containers. But not all the smashes damaged the dumpsters, is that correct? That we know of, because my client does not get notice when smashes occur. But your client has access to all the dumpsters whenever it wants, correct? So you could have gone out and said, of the 1,500 dumpsters we've done an analysis, 850 are damaged. Here's the average repair costs. Is anything like that in there? That is not in there, Your Honor. Though, we do have driver's testimony of damage that occurred to the containers. We heard about it. How many, though? You know, that's, I think, what the district court was looking for. And I'm wondering if it missed. I do believe that the district court simply missed it. I mean, we had several drivers testify at open court and submit affidavits that there was damage to specific containers. We had our container, the person in charge of the container shop, come in and specifically testify about the cost to repair that damage. We also had our witness come in and offer testimony about the lost rental value. And this court, in cases, has recognized that lost rental value is an appropriate measure of damage. We demonstrated how many uses of Republic's containers there had been. We offered a specific, clear testimony on what Republic considered the lost rental value. And we, in fact, would have given a range to the jury. $250 for a typical use. $250 is set out in our contract as what we would charge if you so much as move our container up to $600, which Republic took the position was appropriate in this case, given that there was a use against its specific permission and consent, and a use that was clearly going to be damaging. But the permission and consent went to your customer, didn't it, as opposed to smash my trash, a third party? I'm not sure I understand your question, Your Honor. Well, you're saying the smashing was contrary to what you permitted. Is that right? That's correct. But what you permitted was as between you and your customer, as opposed to this third party that your customer deals with. That is true, but third parties must deal with our property in the way that we demand and see fit. If it were not the case, Your Honors could lend a piece of your equipment to your friend. Your friend could then lend the equipment out to their friend, and I think you would take the position that that wasn't appropriate. They didn't have the ability to use that. And that's what happened in this case. We cite in our briefing all of the case law on the idea that consent given by our customers is wholly ineffective. They did not have the ability to give that consent on our behalf. In fact, we had- Did you take action with your customer to prohibit their use based on your agreement with them? We didn't, Your Honor, and that's been sort of a red herring argument in this case, the idea that Republic had a responsibility to mitigate its damages. That is not a requirement in a case involving an intentional tort, which we have here in this case. Republic, the district court and defendants would suggest that Republic would need to kneecap its business, harm its relationships with its customers, and tell them, you know, we're going to terminate your contracts if you don't stop this. Who is really responsible for this are the defendants in this case, telling our clients that they have the right to smash their trash. So the clients believe that, and they take action, which is why we filed this lawsuit. So is your position, though, that your clients are in breach of contract? I think they are in breach of contract, but I don't believe that's our only remedy. If that were true, any third party could deal with our property with impunity. You, you know, give your car to a valet, and the valet decides they're going to, you know, go joyriding in it, or use it to run an Uber. I think we would all agree that was inappropriate, and it was inappropriate in this case. And specifically, Your Honor, I would, or Your Honors, I would ask you to look at the Tubbs v. Delt case, 932 Southwest 2nd 454. It's a case that defendants actually cited for their position in support of their case. And specifically, they misrepresented to the court that a taking of a camera for five minutes was not a trespass. The court in Tubbs actually found that it was a trespass, but ultimately determined to deny the claim because the trespass was privileged. But, Your Honor, in that decision, the court said that the taking, the dispossession in that instance, even when there was not damage, was a trespass. Counsel, if one of your customers owned the compaction equipment identical to that that was used by Smash My Trash, is there anything in your contracts with your customer that would prevent the customer from compacting just like Smash My Trash was doing? Yes. Thank you for your question. Our contract specifically says that the property can only be used for its normal and proper purpose. And it's important that that's singular. There aren't multiple normal and proper purposes. There's one, and that is to collect waste for transportation. So it would be inappropriate and unauthorized for a client to go in there and use compaction equipment to compact the waste inside the containers. So you think that compressing the trash so you can get more in the container, that's an improper purpose? I mean, don't your customers do that all the time? No. When they move the debris around so they can get more in it? That is not a permitted use. There was testimony in the record that if a customer were to use, for instance, a backhoe to compress waste, we specifically tell the customer that that is inappropriate and that's not permitted. How do you tell them that? The customer rep will contact the customer. I'm talking about contractual provisions, not oral interpretations that come later. I'm talking about you've got a contractual relationship, so that's really what I'm asking about. Sure. Well, and in this case, as I said, the contract specifically says you can only use it for its proper and intended purpose. Is purpose defined? It's not. It's not. I couldn't tell you that it was. But it's apparent in the industry that we deliver the containers for the specific purpose of collecting the waste. So what are the damages? I understand the idea, I guess, of damages if the device damages the dumpster, right? But you're arguing that there's some sort of harm here too, I think, a legal harm, even if there's no damage to the dumpsters. Is that correct? In other words, it's a breach of the contract. Is it actionable in this case? Yes. Will you walk me through that? Where there's no damage to the dumpster, what is the damage theory that supports your claim here? It's a straight violation of Republic's rights. But what rights? I mean, you're not raising a breach of contract because there's no contract here. How does the claim sound? How do you plead it? It is a trespass to chattels.  And that's how we pleaded the case, was as trespass to chattels. And specifically, the basic underlying point is as a property owner, we have the right to exclude others from using our property. So your argument is that's actionable even absent any sort of actual, I'm using actual in a general term, but any provable damages or pecuniary loss, that it's some sort of another sort of damage here. That's correct, Your Honor. And for that point, I would ask you to look at N. Ray Francis Lou Bair, 987 F. 3rd, 771. It's this court's decision where it specifically discusses Missouri law, and in which it specifically says that Missouri law recognizes that for a violation of legal rights, there is always injury, there is always harm, and it will be recognized and should be remedied by the court. Counsel, this is an easy question, I think. In the appellant's brief, you've got some photographs? Yes. And I guess one of them, I assume, that shows a broken latch, and then there appears to be some dents in the other one. Are these containers that are involved in this action? Or it's hard to understand from the explanation here whether maybe these are photographs of containers in other states, or whether they represent photographs of containers that are involved here. I'm sorry, Your Honor. I don't know for sure without looking at the brief, because we did submit photographs of evidence of damage that had occurred throughout the United States, but we also had damage of – The brief says damage to containers from the smashing process, et cetera. What's shown in photographs below has also occurred in other states, and for me, that's difficult to understand what these photographs are. It sounds like to me, if they're photographs from other parts of the country, maybe they shouldn't be in the brief. Well, the point was, Your Honor, we wanted to demonstrate to the court that this process does cause damage, and it's something that defendants admitted. They admitted during trial that, yes, there is contact with the container during smashing. Yes, damage can be caused. As I said, their expert admitted, yes, it does cause degradation. You're going to reduce the useful life of the containers. Our expert testified to that as well, and that testimony was unchallenged. And yet defendants would argue in this case that them using these containers thousands of times, making hundreds of thousands of dollars, is perfectly okay. Counsel, you're well within your rebuttal time. You can continue if you like or reserve. I will reserve my time. Thank you, Your Honor. Thank you. Mr. Little. May it please this honorable court, counsel, the district court was entitled to rely upon the representations in Republic. The district court was entitled to expect and require the Republic comply with Rule 26 and comply with Rule 33 and comply with the court's pretrial orders because to answer the court's question, no, there is not evidence in the record to support the damages they're complaining about. And when you think about it, there was notice to the plaintiff by the district court. There was an opportunity. The plaintiff had the tools, and here there is simply a failure of proof. There was a failure of proof at the time the court considered this simple issue of whether the jury should be stricken. Going back to Judge Shepard's, were these photographs, in the district court record, was there evidence of pictures of damage to dumpsters in Kansas City? They mixed and matched it, Your Honor, so I can't answer that question. The plaintiff would sometimes use evidence from other proceedings. So I'm wondering what the threshold here is in order to get to the jury. I understand, you know, I've asked questions about what might be the ideal, in my mind, evidence. You know, you've got a list of dumpsters. You've got a list of damage. You've got pictures, and you've got estimates for repair. But here they've got something pointing to, as counsel just ended her argument, they've got something pointing to damage. They've got some evidence. How specific does that evidence need to be in order to say, look, you've triggered the $20, and you've got sufficient evidence to send it to a jury? It sounds to me at moments like they've got that, and that the district court was looking for something that was ultimately up to the jury to decide sort of the sufficiency of or the specifics of the damages. The civil rules answer the court's question. Rule 26 now, as amended the last 10 years, imposes very specific instructions upon litigants that you have to specify your damages, the manner by which you compute them, and what those sums are. And then separately under Rule 26, there's going to be disclosure obligations with respect to experts that we know in federal court are very robust. So it's not simply standing before a jury and saying, we've been damaged. You make up the number, whatever you feel like. Rather, under the way the rules are structured now, the litigant has an obligation to both show that there has been damage, but also specify what those damages are. Now, the trial court made that clear when they gave notice, when they denied the TRO, said the claims that you're advancing this case really can be remedied by a damage amount. Go out. Find your expert. Go ahead and quantify your amount. Well, they did quantify it, didn't they? And the numbers are confusing me. Wasn't there a $600 number that was advanced below? Well, there's different components of that, Your Honor. I'll break it into pieces if I may. The first represented to the trial court, they are not seeking damages for any individual container that was damaged. That's what they said in the reply brief in support of the motion for summary judgment. That's what they represented to the trial court during the oral argument on the summary judge motion. So when the trial court reaches the conclusion that they are not seeking damages for any individual container, he did that based upon the representation of counsel. But he also had more because they offered evidence from their mechanic that they have the ability to make these type of computations. That is, you have someone that's been working in their container shop for 30 years, and he can tell you how much it costs to repair a door, or if a hinge has been busted, how much does that cost? They also testified that they have an iPad, like everyone else, that takes photographs, does recordings, allows them to call and report if there's any incident. So they had all the tools available to collect this data if they wanted to. They simply failed to do so. On top of that, they failed to preserve the evidence in the first place. Excuse me. So let me address the $600. The $600 is the fictitious rental fee they came up with. And what the trial court did there is exercise his discretion because it is an abuse of discretion standard and said you don't have a witness who is competent to testify as that subject. One, that is a subject for expert testimony. You have not identified pursuant to Rule 26 an expert to testify as to the $600. The trial court also said your $600 is a gross rental. Well, you need net numbers when you're going to talk about a rental. So there were multiple grounds for the district court to exercise its discretion. Now, you'll notice that when they filed their opening brief, they didn't challenge except for one sentence in their brief that the trial court had aired as to that $600. I would suggest to you that they have waived that particular argument. So going back to your question, there's no evidence of damages to the individual containers in terms of the amount. And again, they specified they were not seeking that. Second, the $600 was an exclusion by the trial court. What did that leave them with? Excuse me, Mike. You're drying the lips. What did that leave them with, Your Honor? It left them with an argument for nominal damages on tort claims. Counsel, was there any claim for some diminution in their revenue based on reduced pickups because of the compaction? No, Your Honor. In fact, we put in our brief a series of their admissions. They admitted they did not have evidence of what that was. We went through an entire list of admissions. What do you not have? Can you show that we've damaged or harmed a third party? No. Can you show a diminution in your revenue? No. Can you show any other types of damages? No, no, no, no. So when it came to the trial court proceedings, what they argued was, one, well, we have nominal damages. The trial court addressed that. It showed that these tort claims, damages were an essential element of the claim. And you lose because you don't have a claim for nominal damages. What else did they say? Well, we have an argument for disgorgement. Well, disgorgement is an equitable theory. So that's up to the judgment side. And even on their unjust enrichment claim, you'll notice that they're not saying that they're entitled to a right to a jury on that. In their brief, they made clear on that, both as to that and the Belmont claim. They are not advancing that type of claim. That is suggesting the trial court erred in denying them a jury. Counsel, did they offer photographs of damaged containers? They did from- Like in the brief? There were, Your Honor. There were. But there was, as they, again, represented the trial court, they were not seeking any damages with respect to any specific damages as to those containers. So whether it was the containers- So no cost to repair? No, Your Honor. You can search the record all day and all night, and you won't find any evidence of that. What you will find evidence of is, again, their acknowledgment that those damages could have been computed, and they simply failed to do so. So it goes back to the basic point. Should a litigant be able to stand before the court or to a jury and say, I've been damaged when you haven't satisfied the basic rules of Rule 26, 33, and the court's pretrial order? I would suggest that when you're looking at the issue of whether or not a jury was properly denied, that this is really an abuse of discretion standard. I understand that's typically a de novo test. But it's an abuse of discretion standard here because the decision-making by the judge that drove that conclusion was based upon his exercise of discretion as to whether or not there was appropriate evidence before the court. If we simply had a jury, let's take it to the opposite extreme, the trial court could have said, No, we're not going to let you argue the issue of damages because you didn't put any evidence in, because you represented to this court that you were not going to offer that type of evidence. This may be a simple question. So simple you don't have it readily available. But what is the case that suggests that we're under an abuse of discretion standard here? I think it's in your briefs, but I- I do have those, Your Honor, I believe. No, I do not. I simply have the standard reviews stated. But because the trial court was excluding the evidence of the $600, that's an abuse of discretion. Because whether or not an expert was required- So all those preliminary sorts of decisions are abuse of discretion. I'm just wondering if the ultimate decision to strike a jury demand is- But your suggestion is that it's under the same standard. In fairness, Your Honor, the issue of whether there was nominal damages, that's a legal issue. So I don't want to mislead the court. $600, that's abuse of discretion. Whether they have an appropriate expert, that's abuse of discretion. Whether or not they've otherwise marshaled evidence that would support putting the evidence before the jury on a damage issue, that's abuse of discretion. The sole exception, Your Honor, would be nominal damages. And on that particular point, we all know the basic rule that when you're talking about a tort, it necessarily requires damages of an essential element. And when damages are an essential element of a claim, then nominal damages are not available. And for purposes of their discussion, they focused a great deal on the subject of, well, there's interference with chattel. But the cases they cite before the court are all cases in dealing with real estate. And real estate has a different level under the law versus a chattel. And the restatement draws that distinction. We noted the restatement's commentary on the subject of trespass with chattels. And it made clear that in that case that you needed evidence of actual damages. You can't simply claim nominal damages. I may be touching this podium. That may be an interference with some chattel, but I'm not causing damage. And the fact I touched it doesn't give you any entitlement to a dollar. You'd have to establish there was some damage caused by me touching this podium. The other interesting thing, though, that's fascinating in this case, is we know the rule in the Eighth Circuit is you actually have to not just identify issues on appeal. You have to expressly explore those in your brief. And as we pointed this out, it's a harmless error analysis here, too. Now, it seems kind of odd in a Seventh Amendment jury trial context. But if you can establish that we would have prevailed on a directed verdict standard, nevertheless, it's a harmless error. And why does that ring true here? Because, in part, not only has the trial court issued a number of legal conclusions as part of the final result that are fatal to the claims, irrespective of whatever the facts are, but there's been no appeal of those legal conclusions by the plaintiff. No appeal, no basis for challenging what the trial court did. So if this court simply applied the propositions of law reached by the trial court that are unchallenged, you'll see that everything they have to say fails as a matter of law. It would have entitled us to a directed verdict, nonetheless. And so it is a harmless error one way or the other as to whether or not a jury has been denied. And those conclusions that are unchallenged before the court relate to such basic things as the construction of the party's contracts, whether the franchisor can have liability, whether or not the test to be applied for unjust enrichment or for interfering with a chattel. There were significant legal issues associated with each of those respective claims that were all decided against the plaintiff in this case. So they can continue to stand before this court and say, the worst thing in the world is happening is that someone is compressing waste and making it more efficient for the customer. But as we've said since day one, their real complaint is in the marketplace. Their real complaint, if they have one, is with their customer, if they believe their customer is violating a contract. And you'll notice that the trial court reached the conclusion, there was also here a failure of mitigation of damages because they have a simple remedy. If they think what is occurring is so horrible, they could have simply contacted the customer with whom they have that contractual right. But throughout this proceeding, what they've tried to do is stake out claims. And with the benefit of hindsight, it becomes fairly clear that what they've done is they've staked out claims that they wanted a bunch of hypotheticals resolved. But when you fail to put evidence before the court, you are asking it to resolve hypotheticals. Because the court is to provide a remedy for an injury, not to answer hypothetical questions of academic curiosity that may be advanced by the plaintiff as to whether A versus B occurs. Counsel, did the appellant present evidence to the district court to back up the contention that the compaction caused excessive weight to be borne by these containers? No, Your Honor. More weight than it's designed to contain? I mean, that's how I understood the complaint is. You keep compacting and it's heavier and heavier, and pretty soon you get to exceed its designed capacity. The complaint, Your Honor, was all hat, no cattle. Because as we listed those admissions that they made, and each container is weighed before it is unloaded at a dump site. And so we asked for they give us the evidence showing that a container was overweight. And you'll see in the record, Your Honor, there's no such evidence. It's part of that long list of admissions. That they advanced a number of claims, various assertions they thought were curious, but when it came to putting up the evidence to support their position, the answer was they didn't. And so the trial court acted appropriately in saying, this is not going before a jury because you have not before this court evidence of actual damages. Thank you. Thank you, Mr. Little. Ms. Sherman, your rebuttal. Thank you, Your Honors. There was a question about the proper intended purpose of the containers, and for that we would ask that you take a look at page 10 of our opening brief. There was an argument that Rule 26 was not complied with. In that regard, we would ask you to take a specific look at our initial disclosures, wherein we stated quite clearly that the damages being sought would be $600 for each unauthorized smash. And that is an appropriate measure of damage for rental value. And in that regard, we would ask the court to take a look at this court's decision and arrow equipment, 416F2-152, specifically indicates that lost rental value is an appropriate measure of damage. So having presented evidence of lost rental value, nothing more was required in this case. The district court erred in improperly weighing that evidence, and instead of doing what should have been done and giving all doubt in favor of a jury trial, determined erroneously that this was a matter for the marketplace. That led to all of the errors in this case, and it was inappropriate. We ask that the district court be reversed. Thank you, Your Honors. Thank you, Ms. Sherman. Thank you also, Mr. Little. The court appreciates both counsel's participation and argument before the court. It's been helpful. We'll continue to study the matter. Thank you.